FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 2 5 2006 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-

ODELL CONNOLLY,

    Defendant.
------------------------------------------------------X

MEMORANDUM and ORDER

05-cr-428 (SLT)

**TOWNES, United States District Judge:**

Defendant, Odell Connolly, who was born and raised in Panama, is charged with violating 8 U.S.C. § 1326(a) by illegally re-entering the Untied States after being deported to Panama following his 1998 conviction for a drug-related "aggravated felony." Following a bench trial, defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, a verdict of acquittal pursuant to Fed. R. Crim. P. 31, on the ground that defendant is a citizen by birth under Immigration and Naturalization Act ("INA") § 303(b), 8 U.S.C. § 1403(b), and, therefore, not an "alien" subject to the provisions of 8 U.S.C. § 1326. For the reasons set forth below, both motions are denied.

## BACKGROUND

The parties are in complete agreement with respect to all facts relevant to these motions. Defendant was born in the Republic of Panama on April 21, 1968. His mother – Norma Connolly, a Panamanian citizen – and his biological father – Larry Brewer, an American citizen – were not married at the time. Indeed, they never married; Mr. Brewer, a serviceman, was separated from active duty on April 3, 1968 (approximately three weeks before defendant was born), was placed in the inactive reserves and returned to his native Illinois, where he remains to this day. In an undated affidavit received by this Court on April 13, 2006, Mr. Brewer acknowledges that he is defendant's biological father and that DNA testing substantiates this

fact. However, neither the Brewer affidavit nor any other evidence adduced at trial suggests that Mr. Brewer has ever taken any action in Illinois to legitimate defendant.

Defendant was raised in Panama, and legally entered the United States as a permanent resident alien in 1993. In 1995, he was arrested in Maryland for possessing 1.5 kilograms of cocaine. He pled guilty to a drug-related felony in a Maryland Circuit Court, and was sentenced to prison. In 1996, after his release from State custody, the Immigration and Naturalization Service ("INS") commenced deportation proceedings, asserting that defendant was deportable as an alien who (1) had violated a law relating to a controlled substance and (2) had been convicted of an "aggravated felony." After an immigration judge ruled that defendant was deportable on both grounds, defendant unsuccessfully appealed to the Board of Immigration Appeals ("BIA"), seeking relief from removal under INA § 212(c), 8 U.S.C. § 1182(c). Defendant does not allege that he claimed to be a United States citizen at any point during these immigration proceedings.

Defendant was deported to Panama in December 1998, but re-entered the United States thereafter. Defendant was arrested by Immigrations and Customs Enforcement ("ICE") agents in Brooklyn in April 2005, and was subsequently indicted on a single count of violating 8 U.S.C. § 1326.

After this Court conducted a bench trial on this charge, at which the parties stipulated to the facts recited above, defendant moved to dismiss this charge on the ground that defendant is not an alien. Defendant argues that he is a citizen by birth under INA § 303(b), 8 U.S.C. § 1403(b) (hereinafter, "§ 303(b)"), which provides, in pertinent part:

> Any person born in the Republic of Panama on or after February 26, 1904, . . . whose father or mother or both at the time of the birth of such person was or is a citizen of the United States employed by the Government of the United States . . . is declared to be a citizen of the United States.

The Government contends that defendant does not fit within this provision because his father (1) never took any steps to legitimate defendant and (2) was not employed by the Government when defendant was born.

## DISCUSSION

This case raises two questions requiring interpretation of INA § 303(b). First, this Court must determine whether the term, "father," refers to a biological parent or only to a parent who has somehow legitimated the parent-child relationship. Second, this Court must determine whether an inactive reservist is "employed by the Government of the United States" for purposes of § 303(b).

Although the United States Code Annotated reports no case law relating to § 303(b), INS Interpretation 303.1(b) indicates that both the United States Attorney General and the BIA have issued opinions relating to the definition of "father." Interpretation 303.1(b) acknowledges that "section 303(b) makes no distinction between persons born in or out of wedlock, and the related legislative history is silent as to whether Congress did or did not intend such a distinction to be drawn." However, that Interpretation states:

> [It has been long settled that, where a statute provides for the acquisition of citizenship through a citizen "father," and does not differentiate between children born in or out of wedlock, the enactment applies to the legitimate child alone or, in any event, contemplates someone other that (sic) "the common law illegitimate ***." From this posture there emerged the well-established basic rule that the illegitimate child does not acquire

3

> citizenship through the putative citizen father unless the child is legitimated in accordance with the law of the father's domicile. The Service takes the position that this same rule shall determine whether a person born out of wedlock has acquired citizenship through a citizen "father" in accordance with . . . section 303(b).

INS Interpretation 303.1(b)(2) (footnotes omitted).[1]

In support of this proposition, the Interpretation cites, *inter alia*, to three opinions of the United States Attorney General – 32 Op. Att'y Gen. 162 (1920); 39 Op. Att'y Gen. 290 (1939); 39 Op. Att'y Gen. 556 (1937) – and to a BIA case – *Matter of P.*, 5 I. & N. Dec. 689, 1954 WL 7948 (BIA 1954). Two of the Attorney General's opinions hold that a child, born out of wedlock and in a foreign country to an alien mother and an American citizen father who subsequently legitimated the child in accordance with the laws of the father's domicile, is a United States citizen. 32 Op. Att'y Gen. 162, at 164-65; 39 Op. Att'y Gen. 556, at 557-58. *Matter of P.*, on the other hand, holds that a child who has not been legitimated under the laws of the father's domicile is not a citizen because "children born abroad out of wedlock of fathers who are citizens of the United States and alien mothers derive citizenship . . . only when such children have been legitimated under the law of the father's domicile." *Id.*, 5 I. & N. Dec. at 691.[2]

---

[1] In reaching this conclusion, INS Interpretation 303.1(b)(2) finds that the definition of "child" in INA § 101(c)(1), 8 U.S.C. § 1101(c)(1), is irrelevant to the definition of "father." Under § 101(c)(1)'s definition, the term "child" includes a child legitimated under the laws of their own domicile, as well as under the laws of the father's domicile. Since the Panamanian Constitution provides that all children are legitimate, regardless of the marital status of their parents, this broader definition might encompass defendant. However, INS Interpretation 303.1(b)(2) states that this definition is irrelevant to § 303(b) because the term, "child," is never used in that statute.

[2] In 1991, the Acting General Counsel of the INS issued an opinion implying that, because a child born out-of-wedlock is legitimate under Panamanian law, such a child born to a United States-citizen father employed by the United States Government should be eligible for citizenship. Genco Op. No. 91-30, 1991 WL 1185141 (Mar. 19, 1991). It is noteworthy that, although this opinion suggested changing the INS Interpretations, no such changes were made.

The Attorney General's opinions and *Matter of P.*, which serves as the basis for Interpretation 303.1(b), must be given deference under the principles enunciated in *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* holds that in reviewing an agency's construction of a statute which the agency administers, a court is not free to "simply impose its own construction on the statute." *Id.* at 842-43. Rather, the court must first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the intent of Congress is clear, both the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction." *Id.*

"An agency interpretation qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and* that the agency interpretation . . . was promulgated in the exercise of that authority." *Coke v. Long Island Care at Home, Ltd.*, 376 F.3d 118, 130 (2d Cir. 2004) (emphasis in original) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)). The INA expressly provides that "[t]he Attorney General shall be charged with the administration and enforcement" of the statute and that a "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). The Attorney General, in turn, has delegated to the BIA the power to exercise the "discretion and authority conferred upon the Attorney General by law" in "considering and determining cases before it." 8 C.F.R. § 3.1(d)(1). In light of these provisions, "it is beyond cavil that Congress . . . delegated the authority to make immigration rules carrying the force of law" to the Attorney General and the BIA. *Lin v. United States Dept. of Justice*, 416 F.3d 184, 189 (2d Cir. 2005), *see Immigration & Naturalization Serv. v. Aguirre-*

5

*Aguirre*, 526 U.S. 415, 424-25 (1999). It is similarly obvious that the Attorney General's opinions and the BIA decision which serve as the basis for Interpretation 303.1(b) were promulgated in the exercise of that authority. Accordingly, the rule that an illegitimate child does not acquire citizenship through a citizen father unless the child is legitimated in accordance with the law of the father's domicile must be accorded deference under *Chevron*.

As Interpretation 303.1(b) correctly notes, "section 303(b) makes no distinction between persons born in or out of wedlock, and the related legislative history is silent as to whether Congress did or did not intend such a distinction to be drawn." Since Congress' intent is unclear, this Court must determine whether the aforementioned rule is based on a permissible construction of INA § 303(b). This Court concludes that it is.

Section 303(b) was enacted to protect longtime Canal Zone employees from the burdensome effects of the 1934 Amendments to Section 1993 of the Revised Statutes of 1878 ("§ 1993"). Prior to these amendments, § 1993 provided that children born abroad inherited the citizenship of their fathers. The 1934 amendments extended citizenship to children born abroad to American citizen mothers, but added certain conditions. First, either the child's mother or father had to be an American citizen who had lived in the United States prior to the birth of the child. Second, children who had one alien parent had to reside in the United States continuously for at least five years prior to his or her eighteenth birthday and had to take an oath of allegiance to the United States within six months of turning twenty-one.

These amendments created problems for longtime residents of the Panama Canal Zone, some of whom had their children in Colon Hospital, an American-run hospital located outside the Canal Zone. Those children born in Colon who had only a single American-citizen parent could not become American citizens unless they spent five consecutive years of their childhood

in the United States. Furthermore, longtime Canal Zone residents who were American citizens but had never lived in the United States could not pass their citizenship to their offspring.

The legislative history set forth in the Government's carefully researched Memorandum of Law suggests that § 303(b) was drafted to eliminate these problems and to protect the citizenship of children born to Americans who had remained in Panama for generations in order to serve United States Government interests there. Nothing in the legislative history suggests that Congress intended to provide a special benefit to the illegitimate offspring of American servicemen. That intent cannot be inferred from Congress's failure to differentiate between children born in or out of wedlock in drafting INA § 303(b); in cases pre-dating the 1937 enactment of § 303(b), courts had construed other immigration statutes using the term, "father," such as § 1993, as applying to legitimate children only. *See Mason ex rel. Chin Suey v. Tillinghast*, 26 F.2d 588, 589 (1st Cir. 1928); *Ng Suey Hi v. Weedin*, 21 F.2d 801, 802 (9th Cir. 1927).

This Court concludes, therefore, that the agency's construction of INA § 303(b), as embodied in Interpretation 303.1(b), is consistent with Congress' intent. The only remaining question is whether defendant has been legitimated in accordance with the law of his father's domicile. At all times relevant to this case, Mr. Brewer has been domiciled in the State of Illinois. However, under Illinois law, "legitimization is accomplished only when an illegitimate child's parents intermarry *and* the illegitimate child is acknowledged by the father as his child." *Estate of Hicks*, 174 Ill.2d 433, 444, 675 N.E.2d 89, 95 (1996) (emphasis in original) (citing 755 Ill. Comp. Stat. 5/2-2(h)). Because marriage is possible only with the consent of both parents, "neither a mother nor a father may unilaterally legitimize a child." *Id.* An adjudication of paternity also does not legitimize an illegitimate child. *Id.*

7

In light of the foregoing, Mr. Brewer's affidavit acknowledging paternity is insufficient to legitimize defendant under Illinois law. Therefore, Mr. Brewer does not qualify as defendant's "father" for purposes of INA § 303(b), and defendant is not a citizen under that statute.[3]

Even assuming, *arguendo*, that Mr. Brewer were defendant's "father" under the statute, defendant could not establish that Mr. Brewer was "employed by the Government of the United States." Title 5, section 2105(d), of the United States Code provides:

> A Reserve of the armed forces who is not on active duty or who is on active duty for training is deemed not an employee or an individual holding an office of trust or profit or discharging an official function under or in connection with the United States because of his appointment, oath, or status, or any duties or functions performed or pay or allowances received in that capacity.

Thus, "Congress has declared in unequivocal terms that inactive reservists and those on active duty for training are not federal employees." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Moreover, although 5 U.S.C. § 2105 itself was enacted in 1966, its predecessor was first enacted in 1930. *See Woods*, 537 F.2d at 810-11 (quoting legislative history). Congress, therefore, can be presumed to have been aware of this limitation at the time it enacted INA § 303(b).

---

[3] Defendant's argument that there is no need to "legitimate" him because he is already legitimate under the laws of Panama is unavailing. The BIA has "held that the term 'legitimate' refers solely to a child born in wedlock." *Matter of Dela Rosa*, 14 I. & N. Dec. 728, 729 n. 1, 1974 WL 30178 (BIA 1974). Therefore, even though all children are legitimate under Panamanian law, such children are not born legitimate but are "legitimated" under Panamanian law when their father declares paternity before Panamanian officials. *Id.*

## CONCLUSION

Because Mr. Brewer does not qualify as defendant's "father," as that term is used in INA § 303(b), and because Mr. Brewer was an inactive reservist and, therefore, not "employed by the Government of the United States" at the time of defendant's birth, *see* 5 U.S.C. § 2105(d), defendant is not a citizen of the United States. Accordingly, defendant's motions for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 and, in the alternative, a verdict of acquittal pursuant to Fed. R. Crim. P. 31, are hereby denied.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
April 19, 2006